UNITED STATES DISTRICT COURT
District of New Jersey

CHAMBERS OF
JOSE L. LINARES
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

**LETTER OPINION & ORDER**

May 25, 2010

**VIA ELECTRONIC FILING**

All Counsel of Record

    Re:    **Buck Consultants, Inc. v. Glenpointe Associates**
              Civil Action No. 03-454 (JLL)

Dear Counsel:

    As the Court writes only for the parties, a familiarity with the underlying facts in this case will be assumed, and facts will not be repeated here except where necessary to provide context for the application.

    Following a bench trial, this Court found Mellon liable to Glenpointe for rent due under a lease agreement for the third floor of a building located at Glenpointe Centre in West Teaneck, New Jersey. This Court held that Glenpointe is entitled to damages as follows:

> Pursuant to its summary judgment opinion issued on March 19, 2009 (Docket Entry No. 82), the following holds true – (1) Mellon is liable for the rent differential between the money to be paid by Eisai to Buck under the proposed sublease and the total amount owed to Glenpointe under the Lease; (2) Mellon is liable for the two-year stub term from March 1, 2007 to February 28, 2009; (3) Mellon must pay prejudgment interest on rent monies unlawfully withheld from Glenpointe; (4) Mellon shall not pay a 5% late fee; and (5) there shall be no reduction in damages for any alleged failure to mitigate by Glenpointe.

(July 22, 2009 Opinion at p. 19). The Court then ordered the parties to meet and confer in order to calculate the appropriate amount of damages within these parameters. The

1

parties, however, were unable to come to an agreement. Therefore, the Court ordered the parties to submit supplemental briefs on the disputed issues, namely (1) the square footage with respect to the third-floor space; (2) the appropriate interest rate to use in calculating prejudgment interest; and (3) whether Glenpointe is entitled to offset the commissions Mellon would have paid to its brokers. The Court will address each issue in turn.

### 1. The Square Footage

The parties dispute what square footage should be used to calculate the rent due. Glenpointe urges the court to use 49,175 square feet, whereas Mellon argues that the Court should use 51,922 square feet.

The Court finds that the rent due shall be calculated by using the square footage on which Mellon's lease was based, namely 49,175 square feet, because (1) there is ample evidence to suggest that this was the actual size of the rentable space and (2) Mellon's sub-lease was not binding.

First, there is ample evidence in the record to suggest that the actual size of the rentable space is 49,175. The preceding tenant's lease was for 49,175. (See Barta's Cert. in Support of Glenpointe's Br., Exh. B, p. 2). The current tenant's lease is for 49,175. (Id., Exh. E, p.2). Therefore, it stands to reason that Glenpointe would not consistently rent fewer square feet than it possessed. Moreover, since Mellon's lease of the third floor premises was for 49,175, calculating the rent due based on a greater square footage – namely, 51,922 – would unjustly enrich Mellon by giving it credit for square footage that did not exist.

Second, Mellon's contention that Eisai's signed letter-of-intent to sub-lease the property from Mellon is binding is unavailing. The very terms of the letter-of-intent that Mellon offers as a binding agreement state that "the proposal is non-binding." (Id., Exh. A, p. 2). Moreover, Mellon fails to provide any case law for the proposition that a letter-of-intent with such a clause constitutes a valid and enforceable binding agreement.

For the reasons stated above, the Court finds that the rent due shall be calculated in reference to 49,175 square feet.

## 2. Prejudgment Interest

Glenpointe is entitled to prejudgment interest on the rent Mellon withheld from Glenpointe. (July 22, 2009 Opinion at p. 19). The parties, however, are unable to agree on the interest rate and whether simple or compound interest should be applied. Mellon argues that the Court should apply simple interest at the cash-management fund rate set forth in New Jersey Court Rule 4:42-11(a)(ii). Glenpointe, however, argues that it is entitled to compound interest at the prime rate. The purpose of a prejudgment interest award is "to indemnify the claimant for the loss of what the moneys due him would presumably have earned if payment had not been delayed." Tobin v. Jersey Shore Bank, 460 A.2d 195, 198 (App. Div. 1983). Thus, the Court must determine "the value of what the moneys due [Glenpointe] would presumably have earned if payment had not been delayed." Id. The Court will first address the interest rate and then determine whether simple or compound interest should be applied.

### a. Interest Rate

As a federal court sitting in diversity, this Court must apply the prejudgment interest rules of the state whose law governs the action. McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 773 (3d Cir. 1990) ("New Jersey law controls the question of whether pre-judgment interest is available."). Here, it is undisputed that New Jersey law applies. "The primary consideration in awarding prejudgment interest is that the defendant has had the use, and the plaintiff has not of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled." Musto v. Vidas, 754 A.2d 586, 598 (App. Div. 2000). In other words, "[i]nterest is not punitive . . . it is compensatory, to indemnify the claimant for the loss of what the moneys due him would presumably have earned if payment had not been delayed." Tobin, 460 A.2d at 198. Under New Jersey law, in contract cases, New Jersey Court Rule 4:42-11(a)(ii) for prejudgment interest is an appropriate "starting point," absent unusual circumstances. DialAmerica Marketing, Inc. v. KeySpan Energy Corp., 865 A.2d 728, 734 (App. Div. 2005); Benevenga v. Digregorio, 737 A.2d 696, 700 (App. Div. 1999) ("[L]acking unusual circumstances, we conclude that the rate of return earned by the State

Treasurer contemplated by R. 4:42-11(a)(ii) is the standard to which trial judges should adhere" in setting a contractual prejudgment interest award).

Glenpointe urges the Court to depart from this general rule and, instead, apply the prime interest rate. The cases cited by Glenpoint in support of applying the prime rate involve creditors and lenders. In these instances courts have found it proper to apply the prime rate as it reflects the costs to the creditor of borrowing the amount of money wrongfully withheld by the debtor. See e.g., Tobin, 460 A.2d at 198 ("Generally, the measure of damages to the creditor will be the cost to him of borrowing the amount of money wrongfully withheld by the debtor. In most cases that will be the prime lending rate."). Here, however, the relationship between Glenpointe and Mellon is one of landlord-tenant, rather that creditor-lendor. The fact that the tenant is a commercial bank, here Mellon, is immaterial to the Court's analysis. Rather, "[t]he primary consideration in awarding prejudgment interest is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled." Musto v. Vidas, 754 A.2d at 598. In other words, "[i]nterest is not punitive . . . it is compensatory, to indemnify the claimant for the loss of what the moneys due him would presumably have earned if payment had not been delayed." Tobin, 460 A.2d at 198. Thus, Glenpointe is entitled to the value of what the rent owed by Mellon would have earned had Mellon paid on time. Glenpointe has not provided any evidence that if it had the benefit of the money withheld by Mellon, that it would have been able to earn the prime rate on said money. Absent such a showing, the Court finds that the equities do not weigh in favor of the prime rate and, thus, the Court will not depart from the rate set forth in New Jersey Court Rule 4:42-11(a)(ii).

### b. Simple versus Compound Interest.

Mellon argues that the Court should apply simple interest. Glenpointe, on the other hand, argues that it is entitled to compound interest because the application of simple interest allows Mellon to keep the return on the monies it withheld, rewards Mellon's improper withholding, and inadequately compensates Glenpointe. (Glenpointe Br.. at p. 14.) "Except as otherwise ordered by the court or provided by law, judgments, awards and orders for the payment of money, taxed costs and counsel fees shall bear simple interest." N.J. Ct. Rule 4:42-11(a)

(emphasis added). See also Johnson v. Johnson, 390 N.J. Super. 269, 274 (2007) (N.J. Ct. Rule 4:42-11(a) prescribes that any order to pay money bears simple interest, compound interest is clearly the exception rather than the rule). Furthermore, New Jersey courts disfavor compound interest as it "unduly hastens the accumulation of debt" which courts regard as "harsh and oppressive." Abramowitz v. Washington Cemetery As'n., 51 A.2d 461, 463 (N.J. Ch. 1947). However, the "propriety of compounded prejudgment interest is left to the 'informed discretion of the district courts,'" Phibro Animal Health U.S., Inc. v. Cornerstone AG Prods., No. 03-2664, 2006 U.S. Dist. LEXIS 91020, at *5, 2006 WL 3733022 (D.N.J. Dec. 18, 2006) (quoting Datascope Corp. v. SMEC, Inc., No. 81-3948, 1988 U.S. Dist. LEXIS 9245, at *4-5, 1988 WL 88049 (D.N.J. Aug. 15, 1988)).

Glenpointe's emphasis on the benefit that Mellon accrued by virtue of withholding the monies is misplaced. The award of prejudgment "[i]nterest is not punitive . . . it is compensatory, to indemnify the claimant for the loss of what the moneys due him would presumably have earned if payment had not been delayed." Tobin, 460 A.2d at 198. New Jersey case law is clear that "[t]he primary consideration in awarding prejudgment interest is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled." Musto, 754 A.2d at 598. Therefore, the Court must focus on "the value of what the moneys due [Glenpointe] would presumably have earned if payment had not been delayed," rather than the alleged benefit to Mellon. Tobin, 460 A.2d at 198.

Here, the Court will exercise its discretion to apply compound interest because it is reasonable to assume that a sophisticated business entity, such as Glenpointe, would have deposited the withheld funds in a financial vehicle that earned compound interest. In other words, had payment not been delayed, then Glenpointe, as a sophisticated business entity, would have deposited the funds in an interest bearing account earning compound interest. In addition, the relatively short period of time over which Glenpointe has been deprived of the use of its funds guards against the concern that compounding the interest due would "unduly hasten the accumulation of debt." Abramowitz, 51 A.2d at 463. Accordingly, the Court finds that Glenpointe is entitled to prejudgment interest compounded annually.

### c. "Windfall" profits

Glenpointe also argues that Mellon must be compelled to return any "windfall profits it earned using Glenpointe's money." (Glenpointe Br., p. 10). The Court finds this argument at odds with the underlying principles of pre-judgment interest, namely that "[i]nterest is not punitive . . . it is compensatory, to indemnify the claimant for the loss of what the moneys due him would presumably have earned if payment had not been delayed." Tobin, 460 A.2d at 198. Requiring Mellon to pay Glenpointe the profits earned through the use of unpaid rent would, in this Court's discretion, be punitive. Mellon's motion to compel payment of so-called "windfall profits" is denied.

### 3. Broker Commissions

Glenpointe argues that it is entitled to the brokerage commissions that Mellon would have paid had the sublease been consummated. Under New Jersey law, an "injured party with a legal right to be compensated for [a] breach of contract is entitled to the amount of damages . . . which . . . will put that party in the same position it would have been in if the breaching party had performed the contract in accordance with its terms, no better position, and no worse." Magnet Res., Inc. v. Summit MRI, Inc., 723 A.2d 976, 985 (App. Div. 1998).

Here, Glenpointe is an injured party with a legal right to be compensated for Mellon's breach of contract. As such, Glenpointe is entitled to damages which will put it in the same position it would have been absent Mellon's breach, namely the value of the outstanding rent due (plus prejudgment interest for the lost value of said rent) less the Eisai credit. A finding that Glenpointe was entitled to payment equal to the Mellon's costs associated with sub-lease would award Glenpointe more damages, thus placing it in a better position than it would have been prior to the breach.

Therefore, Glenpointe is not entitled to the brokerage commissions that Mellon may have paid if the sub-lease had been consummated.

## CONCLUSION

For the foregoing reasons, it is on this 25th day of May, 2010,

**ORDERED** that the rent due shall be calculated in reference to 49,175 square feet; and it is further

**ORDERED** that interest shall be calculated at the rate established by New Jersey Court Rule 4:42-11(a)(ii) and compounded annually; and it is further

**ORDERED** that Glenpointe is not entitled to the brokerage commissions that Mellon may have paid if the sub-lease had been consummated; and it is further

**ORDERED** that within fifteen (15) days of the entry of this opinion and order the parties shall submit a joint proposed form of order stating the final amount due to Glenpointe consistent with this Court's opinions.

/s/ Jose L. Linares
United States District Judge